IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES R. BRAWNER, III, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 11-6131 |
| | : | |
| v. | : | |
| | : | |
| EDUCATION MANAGEMENT | : | |
| CORPORATION, | : | |
| ART INSTITUTE of PHILADELPHIA, | : | |
| U.S. CONGRESSMAN CHAKA FATTAH, | : | |
| U.S. SENATOR OLYMPIA SNOWE, | : | |
| PENNSYLVANIA DEP'T of EDUCATION, | : | |
| U.S. DEP'T of EDUCATION, | : | |
| ACICS, and ACCST, | : | |
| | : | |
| Defendants. | : | |

## OPINION

**Slomsky, J.**                                                    **July 27, 2012**

### TABLE OF CONTENTS

I.      INTRODUCTION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        A.    Subject-Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . 10
              1.    Legal Standard: Rule 12(b)(1) Motion to Dismiss for Lack of Subject-
                    Matter Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
              2.    Sovereign Immunity Bars Plaintiff's Claims against the PA DOE, U.S.
                    Congressman Fattah, U.S. Senator Snowe, and the U.S. DOE, and
                    Legislative Immunity Bars Plaintiff's Claims against U.S. Congressman
                    Fattah and U.S. Senator Snowe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                    a.    Eleventh Amendment Sovereign Immunity Bars Plaintiff's Claim
                          against the PA DOE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                    b.    The Discretionary Function Exception to the Waiver of Sovereign
                          Immunity under the FTCA Bars Plaintiff's Claim of Negligence
                          against U.S. Congressman Fattah, U.S. Senator Snowe, and the
                          U.S. DOE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
                    c.    Legislative Immunity under the Speech or Debate Clause of the

U.S. Constitution Bars Plaintiff's Claim of Negligence against
U.S. Congressman Fattah and U.S. Senator Snowe. . . . . . . . . . . 19

B.    Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).. . . . . . . . . . . . . . . . . . . 21

1.    Legal Standard: Rule 12(b)(6) Motion to Dismiss for Failure to State a
Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

2.    Plaintiff's Fraud, Negligence, and Breach of Contract Claims are Barred
by the Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I.    INTRODUCTION

This case involves claims of fraud, negligence, and breach of contract brought by Plaintiff James R. Brawner, III ("Plaintiff"), proceeding *pro se*, arising from events related to an associate's degree in graphic design he received from the Art Institute of Philadelphia ("the Art Institute") in 1999.

On September 28, 2011, Plaintiff filed an application in this case to proceed *in forma pauperis* ("IFP").  (Doc. No. 1.)   On October 6, 2011, the application was granted (Doc. No. 2). On October 17, 2011, the Complaint was filed naming as defendants the Education Management Corporation ("EDMC"), the Art Institute of Philadelphia, United States Congressman Chaka Fattah, United States Senator Olympia Snowe, the Pennsylvania Department of Education ("PA DOE"), the United States Department of Education ("U.S. DOE"), and the Accrediting Council for Independent Colleges and Schools ("ACICS").[1]  (Doc. No. 3.)  Plaintiff also has brought suit

---

[1]  The Complaint appears to allege claims in three Counts.  They are as follows:

(1) Count I:  Fraud against EDMC and the Art Institute of Philadelphia.  Under this heading, Plaintiff lists additional persons not named as defendants in this case: Michael Santispirit (Student Administrator), Frank Pearlman (President Assistant), Maureen Chappelle (Internship Coordinator), Frank Covaleskie (School President), and Dr. Larkin (School President);

(2) Count II:  Negligence against Congressman Chaka Fattah, Senator Olympia Snowe, the PA DOE, the U.S. DOE, ACICS, ACCST, EDMC, and the Art Institute of Philadelphia.  Under this heading, Plaintiff again lists others not named as defendants, such as, the U.S. Office of the Ombudsman, the Reverend Bill Gray, the PA Attorney General, the Better Business Bureau, and Michael Santispirit (Student Administrator), Frank Pearlman (President Assistant), Maureen Chappelle (Internship Coordinator), Frank Covaleskie (School President), and Dr. Larkin (School President);

(3) Count III:  Breach of Contract against EDMC and the Art Institute of Philadelphia.  This heading also identifies individuals not named as defendants:

against a defendant identified in the Complaint and subsequent pleadings as "ACCST."[2] (Doc.

Nos. 3, 16, 17, and 34.)

Presently before the Court are Motions to Dismiss filed by the PA DOE (Doc. No. 5), by

the Art Institute and EDMC jointly (Doc. No. 8), by ACICS (Doc. Nos. 22 and 23), by the United

States of America on behalf of Senator Snowe and the U.S. DOE (Doc. No. 31),[3] and by

Congressman Fattah (Doc. No. 32).[4]  In response, Plaintiff has filed three motions with the same

_____

   Michael Santispirit (Student Administrator), Frank Pearlman (President
   Assistant), Maureen Chappelle (Internship Coordinator), Frank Covaleskie
   (School President), and Dr. Larkin (School President).

(Doc. No. 3 at 5-7.)

   [2]  The Complaint and responsive briefs filed by Plaintiff name "ACCST" as a Defendant.
(Doc. Nos. 3, 16, 17, 34.)  On December 6, 2011, Plaintiff issued a summons to "ACCSC,"
which was returned as having been executed.  (Doc. No. 12.)  On the summons and proof of
service, the abbreviation "ACCSC" is found in two places.  (Id.)  Because of this abbreviation, it
appears that he intended to name the Accrediting Commission of Career Schools and Colleges
("ACCSC") as a defendant in this case, and not ACCST.  If Plaintiff intended to name ACCST
as a defendant, then ACCST has not been served properly and is not required to respond to the
Complaint.

   [3]  On March 8, 2012, Defendants Senator Snowe and the U.S. DOE jointly filed a Motion
to Substitute the United States as the proper Defendant, along with a joint Motion to Dismiss
Plaintiff's Complaint.  (Doc. No. 31.)  Upon consideration of the first request in the Motion, and
Plaintiff's Response (Doc. No. 34), the Court will grant the Motion to Substitute the United
States as Defendant for Defendants Senator Snowe and the U.S. DOE.  (Doc. No. 31.)  For
purposes of this Opinion, however, the Court will describe the parties either as "the United States
on behalf of Senator Snowe and the U.S. DOE" or will refer to Defendants Snowe and the U.S.
DOE individually.

   [4]  Defendant ACCST is the only named Defendant that did not file a Motion to Dismiss.
No counsel has entered an appearance on behalf of Defendant ACCST.  As discussed in footnote
2, Plaintiff never served Defendant ACCST and apparently intended to name "ACCSC" as a
defendant, and not "ACCST."  In a letter dated December 14, 2011 from ACCSC to Plaintiff,
ACCSC explained its absentation from filing a responsive pleading to the Complaint.  (Doc. No.
41.)  According to ACCSC, it received a summons in this case, but "there was no complaint
included with the summons despite the fact that the summons stated that the complaint was

title: "Motion to Continue/Request to Deny Motions to Dismiss."[5]  (Doc. Nos. 16, 17, and 34.)

On January 24, 2012, the Court held a hearing on whether the case should be dismissed.[6]  (Doc.

No. 28.)  Upon consideration of the parties' briefs, exhibits,[7] and arguments advanced at the

_____

attached to it."  (Id.)  ACCSC further stated:

> As a result, ACCSC has not been properly served and has no knowledge of any
> claims which [Plaintiff has] asserted against it.  For this reason, ACCSC cannot
> respond to your allegations and is under no obligation to do so.

(Doc. No. 41.)  Plaintiff has not rectified the improper service on ACCSC, and as a result,
ACCSC has not been properly served.  See Fed. R. Civ. P. 4(c)(1) ("A summons must be served
with a copy of the complaint. . . .").

[5]  The Court will construe Plaintiff's "Motions to Continue/Requests to Deny Motions to
Dismiss" as his "Responses in Opposition" to the Motions to Dismiss.  The Response in
Opposition to Congressman Fattah's Motion to Dismiss was filed on May 4, 2012 (Doc. No. 34),
after the Congressman filed a Notice with the Court on April 27, 2012 that the deadline for
Plaintiff to file a response had passed (Doc. No. 33).  On May 16, 2012, after receiving Plaintiff's
response opposing the Congressman's Motion to Dismiss, the Congressman filed a Motion to
Strike or For Leave to Submit [a] Reply Brief and an Opposition to Plaintiff's Motion to
Continue.  (Doc. No. 38.)  The Congressman's chief argument is that Plaintiff's late response to
the Congressman's Motion to Dismiss should be stricken from the record because the response
was filed untimely.  The Court will not strike Plaintiff's responsive pleading from the record and
will deny the Congressman's Motion to Strike.  Alternatively, the Congressman has asked the
Court to accept the Motion to Strike as a Reply brief.  The Court will grant the Motion for Leave
to Submit Reply Brief (Doc. No. 38) and will construe the arguments contained in the brief as a
reply to Plaintiff's Response in Opposition to the Motion to Dismiss.

[6]  The following Defendants filed Motions to Dismiss after the January 24, 2012 hearing
and did not request oral argument: Senator Snowe (Doc. No. 31), the U.S. DOE (Doc. No. 31),
and Congressman Fattah (Doc. No. 32).  As noted in footnote 3, in the Motion to Dismiss filed
by Senator Snowe and the U.S. DOE, Senator Snowe and the U.S. DOE have moved to substitute
the United States of America as a Defendant.  (Doc. No. 31.)

[7]  On June 8, 2012, Plaintiff filed supplemental exhibits in support of his case.  (Doc. No.
39.)  Among these documents are additional responsive briefs to Defendants' Motions; email
communications between Plaintiff and representatives of Defendants; photocopies of research
from www.wikipedia.com concerning negligence, sovereign immunity, U.S. Congressman
Fattah, and U.S. Senator Snowe; a catalogue from the Art Institute and other materials relating to
transfer agreements with other educational institutions; a written editorial from

January 24, 2012 hearing, and after an independent review of the allegations in the Complaint,

Defendants' Motions to Dismiss will be granted and Plaintiff's Complaint will be dismissed in

its entirety.

## II.    FACTUAL BACKGROUND

Plaintiff attended the Art Institute of Philadelphia from 1996 through 1999.  (Doc. No. 3

at 5.)  The Art Institute is owned and operated by Defendant EDMC.  (Id. at 5.)  He took classes

to earn an associate's degree in graphic design and earned the degree in 1999.  (Id.)  In 1996,

when he made inquiries about attending the school, the school's admissions and sales

representatives told him that the school was accredited.  (Id.)  The representatives also told him

that an associate's degree from the Art Institute would be transferrable to various undergraduate

schools so that Plaintiff could then work toward a bachelor's degree.  (Id.)  During these

conversations, the representatives referred to language in the school's catalogue in support of

their statements that an associate's degree from the Art Institute would be transferrable to other

schools.  (Id.)  The catalogue has been submitted by Plaintiff with his supplemental exhibits and

states as follows:

---

www.crooksandliars.com referencing Senator Snowe and for-profit colleges; and two
photocopies of Plaintiff's Art Institute of Philadelphia alumni identification cards for the
Summer 2004 and Winter 2005 terms.  (Id.)

In deciding a motion to dismiss, a court may properly consider the complaint, exhibits
attached thereto, documents referenced therein, matters of public record, and undisputably
authentic documents if the complainant's claims are based upon these documents.  Mayer v.
Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Kernaghan v. BCI Communications, Inc., 802 F.
Supp. 2d 590, 593 n.2 (E.D. Pa. 2011).  The Court has examined these documents and will
consider them to the extent that they relate to the claims alleged in the Complaint.

**Pursuit of a Baccalaureate Degree**

As part of its College Articulation Program, the schools of the Art Institute International have entered into arrangements with other colleges and universities, which may increase the opportunity for transfer of credits to those institutions. Graduates of The Art Institute of Philadelphia have the opportunity to apply to pursue a four-year baccalaureate degree.  Agreements vary by institution and academic major, and are decided by the receiving institution on a course-by-course basis.  It is recommended that students request information and an updated list of participating schools as they progress through their programs by contacting the Registrar's Office at The Art Institute of Philadelphia.

(Doc. No. 39 at 37.)  Plaintiff alleges, moreover, that he was led to believe that upon graduation, he would secure employment with his graphic design degree that would enable him to earn a salary "at the 30,000 mark."  (Doc. No. 16 at 13.)  Relying on the catalogue and these statements, Plaintiff decided to attend the Art Institute.

While attending the Institute, Plaintiff encountered what he describes as a "shell game" with his coursework.  Specifically, he claims:

[A] shell game [was] played with courses between 1997-1998 where [an] administrator would register plaintiff for same class previously taken under different name citing previous course load now defunct under alleged new curriculum.  This occurred twice[.]

 (Doc. No. 3 at 6.)  It is unclear whether this "shell game" happened two or three times because Plaintiff alleges elsewhere in the Complaint that these circumstances occurred "2-3 times."  (Id. at 5.)  Regardless, these classes were recommended to Plaintiff by a student administrator named Michael Santispirit.  (Id.)  After Plaintiff paid for and successfully completed the courses, Santispirit later informed Plaintiff that the credits from those classes "were defunct and not applicable towards graduation."  (Id.)

After graduating from the Art Institute, Plaintiff experienced difficulties with utilizing his

degree: he could not transfer his credits to another school, and he could not find employment in

graphic design.  In relation to these two problems, the Complaint states:

> **FRAUD** - Discovered 9/12/2011 per discovery of new information in 2011
> **\*NOTE\*** Information newly discovered was previously requested
> 2000-2011 But refused by the Art Institute of Philadelphia
> and other parties Denied.
> **<u>All attempts</u>** to gather information were blocked/denied.

(Doc. No. 3 at 5.)

In 2000, when Plaintiff decided to transfer his degree for the first time, he tried to obtain

"information" from the Registrar of the Art Institute in the form of a list of other schools that

would accept credits from his associate's degree.  (Doc. No. 3 at 5; Doc. No. 16 at 6.)  He claims

that he sought the information from "2000-2011" but was consistently denied being given the list

he was requesting.  (Doc. No. 3 at 5.)  In July 2007, Plaintiff again asked the Art Institute for a

list of schools to which he could transfer his credits.  (Doc. No. 16 at 4.)  That same month,

Plaintiff received an email response from Adriane Medford, an Art Institute of Philadelphia

representative, who told Plaintiff that "the list did NOT EXIST until 2003 and that it was only for

high school students and a specific major, Multimedia."  (Doc. No. 34 at 4.)  As a part of his

supporting exhibits, Plaintiff has provided what appears to be a copy of this email, which states

in full as follows:

James,

**<u>In 1999 the list did not exist.  Articulation began in 2003.</u>**
The articulation agreements that we have in effect as of now are a little over 95%
High Schools who are able to have transfer of credits come into AiPH.  The few
universities we have do not take in our credits but we articulate their credits into our
programs. In 2004 we articulated with Bloomsburg University where our Multimedia
Web Design Bachelor of Science would fully transfer in and a student with a gpa of
3.0 would be able to go into their Master's Degree program.  However we no longer

6

offer Multimedia Web Design and we are currently seeking to update that as well.

Adriane Medford

(Doc. No. 39 at 25.)[8]

The Complaint alleges that this "[i]nformation was refused from 2000-2007," and according to Plaintiff, it was "finally given to [him] via 3rd party by way of the US Dept of Education . . . ."  (Doc. No. 3 at 6.)  In January 2011, Debra Wiley, a representative of the U.S. DOE, emailed Plaintiff that she would "send copies of the lists with a letter responding to your overall concerns."  (Doc. No. 39 at 23.)  Wiley's email also noted that, upon her review of the articulation agreements referenced in the Art Institute of Philadelphia catalogs for 1996-1998, it was "clear that transferability of credits was up to the receiving institution."  (Id.)  She also alerted Plaintiff that, "As with other information cautioning about transferability of credits, notations on each list reiterate that the individual agreements vary and are subject to change."  (Id.)  Plaintiff claims that he did not receive copies of the lists from Wiley until September 2011.  (Doc. No. 16 at 4; see Doc. No. 34 at 4.)  He also alleges that the information he received from Wiley "proves [that the] email received by Adrienne [sic] Medford of the Art Institute of Philadelphia to be true and correct."  (Doc. No. 3 at 6.)

---

[8]  The Court notes that the email from Adriane Medford does not contain a clear header on the copy that Plaintiff has submitted.  A "header" of an email usually appears at the top of the printed page and identifies the sender, the receiver, the date sent, and the subject matter contained in the body of the message.  Because there is no clear header at the top of the email provided by Plaintiff, the email from Medford is not self-authenticating.  See International Casings Group, Inc. v. Premium Standard Farms, Inc., 358 F. Supp. 2d 863, 873 (W.D. Mo. 2005) (holding that the information contained in the header of an email is sufficient evidence for authentication).  Additionally, it is not evident whether the emphasis added at the beginning of the email is from Medford's original email or has been added by Plaintiff.  Therefore, the Court will refer to this email provided by Plaintiff only to shed light on the facts as Plaintiff views them.

Plaintiff also had difficulty finding employment after graduating from the Art Institute, and as a result, he complained to various individuals and entities, including Defendants, beginning in 2001.  (Id. at 6; Doc. No. 16 at 2, 5; Doc. No. 34 at 3.)  When Plaintiff attempted to obtain information about the degree he earned from the Art Institute, he claims that all Defendants impeded his efforts by denying him the requested information.  (Doc. No. 3 at 7.)  He also claims that Defendants deterred his efforts by failing to address his concerns and hindering investigation by other parties.  (Id.)

Because Defendants Congressman Fattah, Senator Snowe, the PA DOE, and the U.S. DOE did not launch investigations into the Art Institute or EDMC after Plaintiff submitted complaints, Plaintiff alleges that they neglected their duties to him as a citizen and therefore "infringed upon [his] rights per the US Constitution and the Declaration of Independence." (Doc. No. 34 at 13.)  Plaintiff further alleges that Senator Snowe did not investigate his concerns because of her personal ties to EDMC: her husband, John R. McKernan, Jr., is Chairman of the Board of Directors at EDMC.  (Doc. No. 17 at 3.)

According to Plaintiff, Defendants caused him to suffer damages in the amount of $12 million.  He claims that Defendants' actions over a twelve-year period have caused him to be subjected to inaccurate credit reporting and damage to his credit standing, threats of wage garnishment by Sallie Mae, loss of time generally, loss of time in school, loss of income, loss of earning potential, loss of opportunities, financial expenses and filing fees, loss of wages, "threat of legal rights imposed," stress, political ostracization, no assistance from elected government

officials, debt of more than $100,000 and penalties of more than $50,000.[9]  (Doc. No. 3 at 8.)

In a responsive brief, Plaintiff requests additional relief.  (Doc. No. 34 at 4.)  They include:

1.  Absolution of the debt Plaintiff owes to the Art Institute;

2.  Payment of the debt Plaintiff has accrued by attending other educational institutions;

3.  An admission of negligence from Congressman Fattah, Senator Snowe, the PA DOE and the U.S. DOE;

4.  An apology from all persons named in the lawsuit;

5.  Active engagement from Congress, the Senate, and other governmental agencies "to ensure that citizens are not harmed by their decisions or by accepting lobbying efforts of companies like EDMC";

6.  "A complete shut down and dismantling of ALL Art Institutes as well as schools like the Art Institute of Philadelphia until they can provide students with true education that can be used at ANY University or Community College, and that they meet the same accreditations as the Universities and Community Colleges in order to continue to operate."

(Doc. No. 34 at 4.)

Defendants, in turn, ask the Court to dismiss the Complaint based on provisions of the Federal Rules of Civil Procedure.  Each of the Motions to Dismiss seeks dismissal pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.  (Doc. Nos. 5, 8, 22, 23, 31, and 32.)  In addition, Defendants PA DOE, Congressman Fattah, and the United States on

---

[9]  Factored into the $12 million is the annual salary Plaintiff believes he should have been earning starting in 1999.  (Doc. No. 16 at 13.)  He claims that the Art Institute told him that he would find a position that pays a yearly salary of $30,000.  (Id.)  He alleges: "That would be 30,000 per year with raises, additional training, free lance assignments which would generate more income for the last 12-13 years."  (Id.)

9

behalf of Senator Snowe and the U.S. DOE seek dismissal pursuant to Rule 12(b)(1) for lack of

subject-matter jurisdiction.  (Doc. Nos. 5, 31, and 32.)  Congressman Fattah seeks dismissal also

pursuant to Rule 12(b)(4) for insufficient process (Doc. No. 32), and Defendants ACICS and

Congressman Fattah seek dismissal pursuant to Rule 12(b)(5) for insufficient service of process

(Doc. Nos. 22, 23, and 32).  Plaintiff has filed responses to the Motions to Dismiss.  (Doc. Nos.

16, 17, 34, and 39.)  As noted, for reasons discussed below, Defendants' Motions will be granted

and the Complaint will be dismissed in its entirety.

III.    **DISCUSSION**[10]

   A.    **Subject-Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)**

      1.    Legal Standard: Rule 12(b)(1) Motion to Dismiss for Lack of Subject-
            Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires a court to grant a motion to dismiss if

the court lacks subject-matter jurisdiction to hear a claim.  Rule 12(b)(1) states:

   * * *
   Every defense to a claim for relief in any pleading must be asserted in the responsive
   pleading if one is required.  But a party may assert the following defenses by motion:
        (1) lack of subject-matter jurisdiction . . . .

---

   [10]  Defendants PA DOE, Congressman Fattah, Senator Snowe, and the U.S. DOE have
moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and
raise other Rule 12(b) defenses, including 12(b)(6) for failure to state a claim upon which relief
can be granted.  When a motion to dismiss is based on lack of subject-matter jurisdiction in
addition to other defenses, "[a]n actual determination must be made whether subject matter
jurisdiction exists before a court may turn to the merits of the case."  Tagayun v. Stolzenberg,
239 F. App'x 708, 710 (3d Cir. 2007) (citing Malaysia Int'l Shipping Corp. v. Sinochem Int'l
Co., 436 F.3d 349, 358 (3d Cir. 2006)).  See also McCurdy v. Esmonde, No. 02-4614, 2003 WL
223412, at *4 (E.D. Pa. Jan. 30, 2003) ("Without jurisdiction the court cannot proceed at all in
any cause.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)).  The
Court therefore will first address whether subject-matter jurisdiction exists over Plaintiff's claims
against Defendants PA DOE, Congressman Fattah, Senator Snowe, and the U.S. DOE before
considering whether the Complaint states a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(1).  Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual.  See In re Schering Plough Corp. Intron/Termodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).  "Facial attacks, like those presented in this case, contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true."  Walthour v. Herron, No. 11-1690, 2011 WL 1325981, at *2 (E.D. Pa. Apr. 7, 2011) (quotations omitted); see also Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009).

> 2. Sovereign Immunity Bars Plaintiff's Claims against the PA DOE, U.S. Congressman Fattah, U.S. Senator Snowe, and the U.S. DOE, and Legislative Immunity Bars Plaintiff's Claims against U.S. Congressman Fattah and U.S. Senator Snowe

The PA DOE, Congressman Fattah, Senator Snowe, and the U.S. DOE are only named as Defendants in Count II.  The allegation made in this Count covers negligent conduct for failing to investigate Plaintiff's complaints, including negligent conduct on the part of Congressman Fattah and Senator Snowe for failing to launch a full congressional investigation.  These four Defendants argue that sovereign immunity bars the negligence claim brought against them, and Congressman Fattah argues in addition that legislative immunity under the Speech or Debate Clause of the U.S. Constitution bars the same claim.[11]  (Doc. No. 32.)

In response to both the sovereign immunity and legislative immunity arguments raised by Defendants, Plaintiff counters that immunity is not a defense because he believes that the defense

---

[11]  Congressman Fattah also argues that Plaintiff's claims against him should be dismissed for lack of subject-matter jurisdiction because Plaintiff lacks standing under Article III of the U.S. Constitution, which limits federal "judicial Power" to having jurisdiction over "Cases" or "Controversies."  U.S. Const. art. III, § 2.  (Doc. No. 32-2 at 6.)  Because the Court is dismissing the Complaint filed against Congressman Fattah on other grounds, the Court will not be addressing the standing argument raised by Congressman Fattah.

is unconstitutional.  (Doc. No. 16 at 10; Doc. No. 34 at 14.)  He contends that as a citizen, he

should be protected by state and federal agencies and entities established to represent his

interests.  (Doc. No. 16 at 10.)  Plaintiff's arguments, however, are unavailing.  The Court agrees

with the PA DOE, Congressman Fattah, and the United States on behalf of Senator Snowe and

the U.S. DOE that sovereign immunity and legislative immunity bar Plaintiff's negligence claim

against them set forth in Count II of the Complaint.  Accordingly, the PA DOE, Congressman

Fattah, Senator Snowe, and the U.S. DOE will be dismissed as Defendants in Count II.

> a.   Eleventh Amendment Sovereign Immunity Bars Plaintiff's Claim
>      against the PA DOE.

The Eleventh Amendment to the United States Constitution provides: "The Judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against any one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Third Circuit has held

that:

> The guarantee of the Eleventh Amendment is that non-consenting states may not be
> sued by private individuals in federal court unless Congress abrogates the states'
> immunity pursuant to a valid exercise of its power.  The Eleventh Amendment's bar
> extends to suits against departments or agencies of the state having no existence apart
> from the state.

Cook v. Floyd, 389 F. App'x 702, 703 (3d Cir. 2010) (citations omitted).

Here, viewing the facts alleged in the Complaint in the light most favorable to Plaintiff,

he claims that the PA DOE was negligent in its supervision of the Art Institute as an educational

institution in Pennsylvania.  (Doc. No. 3 at 7.)  Count II also alleges that the PA DOE failed to

act when it became aware of Plaintiff's allegations against the Art Institute.  (Id.)  However, the

Pennsylvania Department of Education is an agency of the Commonwealth of Pennsylvania and has "no existence apart from the state." CG v. Pennsylvania Dep't of Educ., No. 06-1523, 2011 WL 318289, at *3 (M.D. Pa. Jan. 28, 2011) (citing Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981)).  As a result, the sovereign immunity afforded to departments or agencies of the state by the Eleventh Amendment bars federal jurisdiction over Plaintiff's claims against the PA DOE, which may not be sued in federal court.  Consequently, the PA DOE must be dismissed as a Defendant in Count II.

> b.   The Discretionary Function Exception to the Waiver of Sovereign Immunity under the FTCA Bars Plaintiff's Claim of Negligence against U.S. Congressman Fattah, U.S. Senator Snowe, and the U.S. DOE.

The United States has dealt with its own sovereign immunity in the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. ("FTCA").  The FTCA "is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies and officers acting within their official capacity."  Chickie's and Pete's, Inc. v. Inter City Leasing Co., No. 01-4890, 2002 WL 1929458, at *1 (E.D. Pa. Aug. 19, 2002); Melo v. Hafer, 912 F.2d 628, 640 (3d Cir. 1990).  Because Plaintiff brings a tort claim of negligence against Congressman Fattah, Senator Snowe, and the U.S. DOE, the FTCA initially acts as a waiver of sovereign immunity.  In this case, however, there are legal impediments that bar Plaintiff from using the FTCA as a means of seeking relief against these three federal Defendants.

First, under the FTCA, Plaintiff must exhaust administrative remedies before filing suit in federal court.  28 U.S.C. § 2675(a)[12]; McNeil v. United States, 508 U.S. 106, 113 (1993).

---

[12]   Section 2675(a) of the FTCA states:

13

Nothing in the Complaint or in Plaintiff's responsive briefs, read in the light most favorable to him, suggests that he took steps to exhaust his administrative remedies before filing a suit in federal court.  For this reason alone, the Count II negligence claims should be dismissed.

Even if Plaintiff had exhausted his administrative remedies prior to filing this lawsuit, the waiver of sovereign immunity under the FTCA would be unavailing because of the statutorily based discretionary function exception.  In order to determine whether the discretionary function exception applies, a court must apply an analysis utilizing the framework of the FTCA, about which the Third Circuit has stated the following in full:

> The United States, "as a sovereign, is immune from suit unless it consents to be sued." Merando, 517 F.3d at 164 (citing United States v. Mitchell, 445 U.S. 535, 538 (1980)).  The FTCA is a "partial abrogation" of that immunity, Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997), and permits suits against the United States for torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1).  The FTCA, however, "imposes a significant limitation," Gotha, 115 F.3d at 179, by providing that the provisions of 28 U.S.C. § 1346 shall not apply to:
>
> > [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved

---

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail*. . . .

28 U.S.C. § 2675(a) (emphasis added).

14

be abused.

28 U.S.C. § 2680(a).

This discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). The exception "does not apply to every situation in which there is an actual option to choose between courses of action or inaction." Gotha, 115 F.3d at 179.  Rather, it immunizes from second-guessing "legislative and administrative decisions grounded in social, economic, and political policy." Id. (citing Varig Airlines, 467 U.S. at 814).

As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue.  Merando, 517 F.3d at 165.  The court must then follow a two-step inquiry to determine whether the discretionary function exception immunizes the government from a suit arising out of such conduct.  Id. at 164.  "First, a court must determine whether the act giving rise to the alleged injury and thus the suit involve[d] an 'element of judgment or choice.'"  Id. (citing United States v. Gaubert, 499 U.S. 315, 322 (1991)).  If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception does not apply because "the employee has no rightful option but to adhere to the directive."  Berkovitz v. United States, 486 U.S. 531, 536 (1988).  However, where a specific course of action is not prescribed, we proceed to the second step, which requires us to determine "whether the challenged action or inaction 'is of the kind that the discretionary function exception was designed to shield.'"  Gotha, 115 F.3d at 179 (quoting Berkovitz, 486 U.S. at 536).  "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy."  Gaubert, 499 U.S. at 323 (internal marks and citations omitted).  The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  Id. at 325.[13]

---

[13]  The Honorable Jane Roth, in her concurring opinion in S.R.P. ex rel. Abunabba v. United States, has described the discretionary function exception to the waiver of sovereign immunity as follows:

First, the discretionary function exception shields the government only from those claims which challenge actions that (1) "involve an element of judgment or choice" and that (2) are "based on consideration of public policy."  United States v. Gaubert,

S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 332-33 (3d Cir. 2012).[14]

With the above principles in mind, the Court first must identify the challenged conduct.

S.R.P. ex rel. Abunabba, 676 F.3d at 333-34.  Here, Plaintiff claims that Congressman Fattah, Senator Snowe, and the U.S. DOE failed to investigate his concerns about the education he received from the Art Institute and his concerns about the EDMC as owner and operator of the Art Institute.  (Doc. No. 3 at 7.)  He also claims that the failure to investigate his concerns constituted an "abandon[ment] of their duties to their constituents for political reasons."  (Id.) Regarding Senator Snowe specifically, looking at the Complaint in the light most favorable to Plaintiff, he alleges that she was a lobbyist for Defendant EDMC and had a "questionable relationship" with Defendant EDMC because her husband, John R. McKernan, Jr., is Chairman of the Board of Directors at EDMC.  (Id. at 6; Doc. No. 17 at 3.)

Where, as here, Plaintiff has not directed the Court to a statute, regulation, or other policy that required or prescribed a course of action for the Congressman, the Senator, or the U.S.

---

499 U.S. 315, 322, 323 (1991).  I also agree that whether an action involves an element of judgment or choice depends entirely on whether "a federal statute, regulation, or policy specifically prescribes a course of action. . . ."  Berkovitz v. United States, 486 U.S. 531, 536.  If an action is specifically prescribed, there is no discretion as to how to perform it.  Finally, I agree that, if there is no precise statutory, regulatory, or policy prescription for a course of action, the determination whether an action is based on public policy considerations focuses on the "nature of the action[ ] taken" and whether it is "susceptible to policy analysis."  Gaubert, 499 U.S. at 315.

S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 345-46 (3d Cir. 2012) (Roth, J., concurring) (parallel citations omitted).

[14]  In the Third Circuit, "a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity . . . , [and] the Government has the burden of proving the applicability of the discretionary function exception."  S.R.P. ex rel. Abunabba, 676 F.3d at 333.

Department of Education to investigate his complaints about the Art Institute and EDMC, the Court will consider the second inquiry under the discretionary function exception—whether the alleged action or inaction involved an element of judgment or choice based on considerations of public policy.

As a practical matter, the decision to investigate a matter on behalf of a constituent can only involve an exercise of discretion.  See Baer v. United States, No. 11-1277, 2011 WL 6131789, at *6 (D.N.J. Dec. 8, 2011) (dismissing claims of investor plaintiffs against the Security Exchange Commission after the plaintiffs were defrauded by Bernard Madoff and finding that "as a matter of common sense, the decisions made by the [Security Exchange Commission] to investigate Madoff appear to be discretionary, involving the exercise of judgment.").  Moreover, as discussed below, the discretion exercised by the Congressman, the Senator, and the U.S. DOE in deciding on a response to Plaintiff's complaints were based on considerations of public policy and therefore susceptible to "policy analysis."

In Baer, the Government argued, and the court agreed, that the investigation of Bernard Madoff in that case was susceptible to "policy analysis" for the following reasons:

> limited resources force the government to choose among competing priorities, such as whether to investigate possible "front-running" instead of a possible Ponzi scheme . . . .  At the end of the day, limited resources affect agency decisions concerning which laws to emphasize, which investigations to initiate, which leads to pursue, which witnesses to question, which questions to ask, and which documents to request.  All of these decisions are susceptible to policy analysis. . . .  This is persuasive.  Indeed, decisions by a regulatory agency about who or what to investigate are quintessential governmental policy decisions.  In a world in which governmental resources are finite, the SEC cannot investigate everyone and everything.  The agency must decide which leads are most worth pursuing, and which investigations are most likely to produce the greatest public benefit.  Such decisions—about the depth and breadth of an investigation, which implicate the allocation of resources such as manpower—fundamentally entail matters of policy.

Id. (citation omitted).

The Baer court held that because of these concerns, the discretionary function exception under the FTCA applied to shield the Government from the plaintiff's claims.  Id. at *7, 9.  As that court noted:

> [T]o impose an obligation on the government to expend the resources sufficient to uncover every wrong which could be discovered from a proper investigation is to impose an unlimited obligation on the government to spend its resources on such endeavors, whether or not fiscal policy concerns might require otherwise.

Id. at *7.

In the instant case, Congressman Fattah raises similar arguments to those raised by the Government in Baer.  He asserts:

> Members of Congress, like Congressman Fattah, have many constituents and only limited resources to use in assisting those constituents with their problems.  These judgment calls are precisely the sort of action for which the discretionary function exception was designed.  Indeed, courts specifically have held that decisions by a Member of Congress involving the office's response, or lack thereof, to a constituent's request are not actionable under the FTCA because they fall within the discretionary function exception.

(Doc. No. 32-2 at 6 (citing Karchin v. Metzenbaum, 587 F. Supp. 563, 566 (N.D. Ohio 1983)).) The same argument applies to Senator Snowe and the U.S. DOE.  Here, like the court in Baer, this Court agrees that the policy considerations described above permit the discretionary function exception to shield Congressman Fattah, Senator Snowe, and the U.S. DOE from Plaintiff's allegations of negligence.[15]  Since the discretionary function exception applies, the waiver of

---

[15]  Plaintiff is not a constituent of Senator Snowe, who is a U.S. Senator from Maine. (Doc. No. 39-3 at 11.)  Her failure to act on his behalf on a matter that could remotely involve her husband does not rise to the level of a conflict of interest as Plaintiff alleges.  Furthermore, a decision to investigate concerns raised by a constituent or non-constituent falls squarely within a legislator's discretion, which is protected by the discretionary function exception "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

18

sovereign immunity as to these Defendants under the FTCA is not applicable here, and they are covered by sovereign immunity.  Therefore, Plaintiff's action against them will be dismissed.

        c.     Legislative Immunity under the Speech or Debate Clause of the U.S. Constitution Bars Plaintiff's Claim of Negligence against U.S. Congressman Fattah and U.S. Senator Snowe.

Plaintiff's claim of negligence against Congressman Fattah and Senator Snowe includes an allegation that these two Defendants should be held liable for failing to launch a congressional investigation into the operations of the Art Institute and EDMC.  However, the Speech or Debate Clause of Article I in the U.S. Constitution affords protection to United States Representatives and Senators in their official duties.  U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, they shall not be questioned in any other Place.").  This Clause provides members of Congress legislative immunity as "practical security for protecting the independence of the legislative branch—by ensuring that legislators are not subject to 'prosecution by an unfriendly executive and conviction by a hostile judiciary.'"  Youngblood v. DeWeese, 352 F.3d 836, 839 (3d Cir. 2003) (quoting United States v. Johnson, 383 U.S. 169, 179 (1966)).  When this legislative immunity applies, it is an absolute bar to suit.  Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 503 (1975).

The immunity provided under the Speech or Debate Clause applies to "legislators acting within the sphere of legitimate legislative activity."  Eastland, 421 U.S. at 503.  The scope of this "sphere" should be interpreted "broadly" by a district court, United States v. Johnson, 383 U.S. 169, 180 (1966), and encompasses all activities that are:

an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the

19

Constitution places within the jurisdiction of either House.

Id. (quoting Gravel v. United States, 408 U.S. 606, 625 (1972)).

Here, Plaintiff attacks the investigative function of Congress.  Namely, he contends that Congressman Fattah and Senator Snowe failed to investigate the Art Institute and EDMC. Congressional investigations fall into the sphere of legislative activities that are protected by the Speech or Debate Clause.  Watkins v. United States, 354 U.S. 178, 187 (1957) ("The power of the Congress to conduct investigations is inherent in the legislative process."); Youngblood, 352 F.3d at 839 ("Investigation is within the sphere of legitimate legislative activity to which legislative immunity extends."); Gov't of V.I. v. Lee, 775 F.2d 514, 521 (3d Cir. 1985) ("fact-finding [conducted by an individual legislator] occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity.").  Because the investigative power of Congress falls within the sphere of legislative functions protected by the Speech or Debate Clause, Plaintiff's allegation that Congressman Fattah and Senator Snowe should be liable because they did not set in motion a congressional investigation of the Art Institute and EDMC fails.

In light of the above, Plaintiff's negligence claim contained in Count II of the Complaint against Congressman Fattah and Senator Snowe, also will be dismissed.  Furthermore, Plaintiff has not alleged that he has exhausted his administrative remedies under the FTCA, and sovereign immunity bars Plaintiff's claim against Congressman Fattah, Senator Snowe, and the U.S. DOE. Additionally, this Court will not engage in judicial second-guessing of a matter involving the exercise of discretion made by Congressman Fattah, Senator Snowe, and the U.S. DOE. Accordingly, the Motions to Dismiss of Congressman Fattah and the United States on behalf of

Senator Snowe and the U.S. DOE will be granted.

**B.      Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)**

All Defendants in their Motions to Dismiss ask the Court to dismiss the Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

The Court has already discussed why Plaintiff's claims contained in Count II against the PA

DOE, Congressman Fattah, Senator Snowe, and the U.S. DOE will be dismissed for lack of

subject-matter jurisdiction.  The Court will therefore concentrate here on the remaining

allegations of fraud, negligence, and breach of contract contained in Counts I, II, and III against

Defendants EDMC, the Art Institute, and ACICS.

The remaining Defendants raise two primary arguments in their motions.  First, they

assert that the statute of limitations bars Plaintiff's suit.  Second, they contend that the Complaint

should be dismissed for a failure to satisfy the minimum pleading requirements of Fed. R. Civ. P.

12(b)(6).  As discussed below, the Complaint will be dismissed against Defendants EDMC, the

Art Institute, and ACICS because, when the statute of limitations is applied here, it fails to state a

claim upon which relief can be granted.[16]

1.      Legal Standard: Rule 12(b)(6) Motion to Dismiss for Failure to State a
        Claim

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set

forth in the Supreme Court's opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it

is clear that "threadbare recitals of the elements of a cause of action, supported by mere

---

[16]  The EDMC and the Art Institute also seek to dismiss the fraud and negligence Counts based on the "gist of the action" and "economic loss" doctrines.  The Court will not discuss these doctrines because the Complaint will be dismissed for other reasons.

21

conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949;

see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal

and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010),

set forth a three-part analysis that the court must conduct in evaluating whether allegations in a

complaint survive a 12(b)(6) motion to dismiss.  629 F.3d at 130; see also Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating a

two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim."  Second, the court should identify allegations that, "because they are no more
> than conclusions, are not entitled to the assumption of truth."  Finally, "where there
> are well-pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for relief."

Santiago, 629 F.3d at 130 (quoting Iqbal, 129 S. Ct. at 1947, 1950).  While a district court must

accept all of the complaint's well-pleaded facts as true, a complaint must do more than allege a

plaintiff's entitlement to relief—it must "show" such an entitlement with its facts.  Fowler, 578

F.3d at 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

> 2.    Plaintiff's Fraud, Negligence, and Breach of Contract Claims are Barred
>        by the Statute of Limitations

As an initial matter, in considering the time frame of Plaintiff's well-pleaded facts and

allegations in the light most favorable to Plaintiff, it is evident the statute of limitations bars his

claims.  As noted above, Plaintiff brings claims of fraud, negligence, and breach of contract, all

stemming from the coursework and degree he received from the Art Institute of Philadelphia.  In

Pennsylvania, the limitations period for fraud and negligence claims is two years.  42 Pa. Cons.

Stat. § 5524(7).  The limitations period for a breach of contract claim is four years.  42 Pa. Cons.

Stat. § 5525.  "[T]he purpose of the statute of limitations . . . is to protect defendants from stale claims."  <u>McCreesh v. City of Philadelphia</u>, 888 A.2d 664, 665 (Pa. 2005).  This protection "expedite[s] litigation and thus discourage[s] delay and the presentation of stale claims which may greatly prejudice the defense of such claims."  <u>Id.</u> at 671 (citation omitted).  Critical to the statute of limitations issue is a determination of when the limitations period accrued for each claim and whether Plaintiff is entitled to tolling under the "discovery rule."

      "'In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion.'"  <u>Atlantic Pier Assoc., LLC v. Boardakan Restaurant Partners, L.P.</u>, No. 08-4564, 2011 WL 3268129, at *4 (E.D. Pa. Jul. 29, 2011) (quoting <u>Fine v. Checcio</u>, 870 A.2d 850, 857 (Pa. 2005)).  However, under the "discovery rule," the statute of limitations "does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct."  <u>Danysh v. Eli Lilly and Co.</u>, 461 F. App'x 75, 77 (3d Cir. 2012) (quoting <u>Fine</u>, 870 A.2d at 859) (internal quotations omitted).  This period commences when a plaintiff has "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause."  <u>Danysh</u>, 461 F. App'x at 77 (quoting <u>Gleason v. Borough of Moosic</u>, 15 A.3d 479, 484 (Pa. 2011)) (internal quotations omitted).  "The point of time at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury.  Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law."  <u>Atlantic Pier Assoc., LLC</u>, 2011 WL 3268129, at *4 (quoting <u>Sadtler v.</u>

23

Jackson-Cross Co., 587 A.2d 727, 732 (Pa. Super. Ct. 1991)) (quotation marks omitted).

Defendants argue that Plaintiff's claims are time-barred because he was enrolled at the Art Institute from 1996 to 1999, and he received his degree from the Art Institute in 1999. Plaintiff responds that the harm was not discovered until at least 2000, when he tried to transfer credits from his degree and was unable to do so.  Additionally, Plaintiff contends that he did not have proof until 2006 that the Art Institute was not an accredited institution when he began his coursework there.  (Doc. No. 16 at 6.)  He further contends that he could not have known about or discovered the harm until July 2007, when he "was told directly by an Art Institute employee within the registrar's office that the LIST [he] had been requesting from the schools since 2000, and NEVER received, even after meeting directly with the President of the school in person, never existed while [he] was a student."  (Id.)  Given these factors, Plaintiff asserts that the discovery rule should toll the statute of limitations.

Here, Plaintiff first experienced problems with the coursework provided to him between 1997 and 1999.  During this time period, Plaintiff claims that "2-3 times between 97-99" he registered for, paid for, and passed courses that he was advised to take by an employee of the Art Institute only to be later told that the credits from those classes would not apply toward his degree in graphic design.  (Doc. No. 3 at 5.)  Because this happened more than once, Plaintiff was on notice while attending the Art Institute that there was possibly something awry with the credits he was receiving and the degree he was about to obtain.  Moreover, Plaintiff began submitting and expressing grievances about his training from the Art Institute as early as "2001-2003" after having difficulties securing employment in graphic design with his Art Institute degree.  (Doc. No. 16 at 2, 5; Doc. No. 34 at 3.)  He also was aware by July 2007 about problems

24

with transferring credits.  These grievances are admitted by Plaintiff and signify that he had

actual or constructive knowledge of concrete and potential problems with the credits and degree

he earned from the Art Institute by 2003, and problems with employment and transfer of credits

by July 2007.[17]

Despite Plaintiff's knowledge about problems with his degree as early as 2003 and as late

as July 2007, he asks the Court to suspend the limitations period based upon when he claims he

discovered the misconduct by the various Defendants named here.  However, the limitations

period is "not postponed until the injured party knows every fact necessary to bring his action."

Danysh, 461 F. App'x at 77 (3d Cir. 2012) (internal quotations omitted).  As the above

demonstrates, the facts are clear that Plaintiff had knowledge of significant harm that could befall

him as a result of his attendance at the Art Institute as early as 2003 and as late as July 2007.  In

---

[17]  The fact that lists of schools that would accept his credits were not provided to him by
the Art Institute and were finally given to him by the U.S. DOE in 2011 does not overcome the
fact that Plaintiff knew about the transfer problems associated with his degree well before July
2007.

As a secondary matter, the catalogue from the Art Institute does not contain language that
guarantees that Plaintiff would have been able to transfer credits from his associate's degree to
another institution.  (Doc. No. 39 at 37.)  The catalogue clearly states:

**Pursuit of a Baccalaureate Degree**

As part of its College Articulation Program, the schools of the Art Institute
International have entered into arrangements with other colleges and universities,
which **may increase the opportunity for transfer of credits to those institutions**.
Graduates of The Art Institute of Philadelphia have the opportunity to apply to pursue
a four-year baccalaureate degree.  **Agreements vary by institution and academic
major, and are decided by the receiving institution on a course-by-course basis**.
. . .

(Id.) (emphasis added).

every filing of Plaintiff, it is evident that Plaintiff knew something was askew by July 2007 and

earlier while he attended the Art Institute.  He filed his Application to Proceed *in forma pauperis*

on September 28, 2011 and the Complaint on October 17, 2011, well beyond the two- and four-

year limitations periods for claims of fraud, negligence, and breach of contract.  The "discovery

rule" provides him no relief here from the clear bar of the statute of limitations.  Consequently,

Plaintiff's claims are time-barred, and Counts I, II, and III will be dismissed against Defendants

EDMC, the Art Institute of Philadelphia, and ACICS.[18]

## V.   CONCLUSION

The Court lacks subject-matter jurisdiction to hear the claims made against the PA

DOE, U.S. Congressman Fattah, U.S. Senator Snowe, and the U.S. DOE.  Accordingly,

the Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) filed by these Defendants will

be granted.  Moreover, the statute of limitations bars Plaintiff's claims of fraud,

negligence, and breach of contract, which requires dismissal of all Defendants pursuant to

---

[18]  It is apparent that since the limitations periods prevent Plaintiff's claims in this case, Defendants Congressman Fattah, Senator Snowe, and the U.S. DOE also should receive the benefit of this defense.  Moreover, because Plaintiff's claims are time-barred, the Court will not address whether his allegations of fraud, negligence, and breach of contract satisfy the pleading requirements under Iqbal.  Ordinarily, even though a plaintiff has not moved to amend a complaint, he would be given leave to do so under Fed. R. Civ. P. 15 in the absence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the opposing party, or futility of an amendment.  Windle v. Earl, No. 11-1871, 2012 WL 1694542, at *4 n.1 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, because the statute of limitations bars Plaintiff's claims of fraud, negligence, and breach of contract contained in Counts I, II, and III, respectively, allowing him to amend the Complaint would be futile.  Construing the allegations contained in the Complaint, Plaintiff's Responses, and the additional exhibits filed by Plaintiff in the light most favorable to him (Doc. Nos. 3, 16, 17, 34, and 39), these filings fail to cure the deficiencies inherent in the time frame alleged.  For this reason, leave to amend the Complaint will not be worthwhile.

Fed. R. Civ. P. 12(b)(6).[19]  Counts I, II, and III of the Complaint will be dismissed in their entirety.

Appropriate Orders follow.

---

[19]  As noted above, Defendant ACCST has not been served properly.  Moreover, even if Plaintiff intended to name ACCSC as a Defendant instead of ACCST, this Defendant also was not served properly with the Complaint.  (Doc. No. 41.)

Regardless, any case brought against either ACCST or ACCSC would be barred by the statute of limitations.  Therefore, the Complaint will also be dismissed as to Defendants ACCST/ACCSC.